Scott, J.
The plaintiff in error was arraigned at the March term, 1858, of the court of common pleas of Lucas county, on an indictment for murder in the first degree, to which he pleaded “ not guilty.” The issue thus made was tried by a jury, at the following June term of said court, and a verdict rendered against the prisoner, finding him guilty of murder in the first degree, as he stood charged in the indictment.
A motion was thereupon made in behalf of the prisoner, to set aside this verdict, and grant him a new trial, for various reasons, founded principally on alleged errors of the court, in the instructions given to the jury. This motion was overruled, and the prisoner adjudged to be executed.
A bill of exceptions was thereupon regularly taken, from which it appears that evidence was offered by the state, upon the trial, tending to show the following state of facts: That the deceased, Anthony Upelle, was killed by the discharge of a gun, loaded with buck-shot, between 12 and 1 o’clock of the night of July 19th and 20th, 1857. That the deceased was sitting in a room of his own house, and was shot through a window, by some person from without. That Beaudien was living, at the time, with one Harriet Gay, whose house was about forty rods distant from that of TJpelle, where the homicide was committed. That a quarrel had taken place between the deceased and the plaintiff in error on the evening preced *636 ing the homicide, growing out of familiarities between the deceased and Mrs. Gay, at the close of a corn-hoeing bee, at her house; and that Beaudien said, upon that occasion, that Mrs. Gay was the last woman that he, Upelle, would ever kiss. That tracks were discovered, early next morning, leading from the house where Beaudien was living with Mrs. Gay, to a point about ten feet distant from the window- through which the gun was fired, and where a person of the prisoner’s height must have stood when discharging the gun, in order that the charge should take effect upon the body of Upelle, where th'e wounds were discovered. That the impressions of these tracks were, in several places, clear and distinct, and corresponded accurately in size, shape, and all their peculiarities, with the boots worn by Beaudien.
The defendant offered evidence tending to show an alibi; and that rain had fallen during the night, subsequent to the murder, to such an extent as to render the identification of tracks, previously made, unreliable; and that no quarrel had occurred between himself and Upelle, on the preceding evening.
Other testimony Was offered, by both parties, which is not set out in the bill of exceptions. .
It was claimed in argument before the jury, by the prisoner’s counsel, that the defendant, if guilty at all, was guilty of murder in the first degree; and that if the jury could not find him guilty of murder in the first degi’ee, they must acquit him. To this the prosecuting attorney assented; and, in argument, admitted that the prisoner must be acquitted if the jury could not find him guilty of murder in the first degree, upon the evidence before them.
The court thei’éupon, among other things, charged the jiiry, in relation to the gi’ade of crime with which the prisoner stood charged, as follows: “ Under the laws of Ohio, murder in the first degree is defined to be the intentional killing of another, unlawfully and purposely, with deliberate and premeditated malice. That the deceased was *637 killed under such circumstances as would constitute, this, crime, on the part of some one, can, from the evidence, admit of hut little doubt. Indeed, it is frankly conceded by the counsel for the defense, that the evidence clearly establishes the crime, and that the only real issue made, by counsel before the jury, is the prisoner’s connection with the transaction — did he commit the crime, or did he not? * * * * * If the jury, in this case find the prisoner guilty of the charge, you will have to state in your verdict that you find him guilty of murder in the first degree. And if you do. not find him thus guilty, your verdict will be, not guilty.”
No exception was made by counsel to the charge, at the time it was given to the jury. But among the reasons in support of the motion for a new trial, it was assigned that the court erred, in charging the jury, that if they found the defendant guilty, they must find- him guilty of murder in the first degree.
Many errors are now. assigned, as grounds for. the reversal of the judgment in this case, but we think none of them require formal examination and adjudication, excepting those which relate to the portion of the. charge of the court above stated.
The instruction given by the court to the jury, that if they found the prisoner guilty of the charge, they would have to state in their verdict that they found him guilty of murder in the first degree, must be regarded as the statement, of a legal proposition, founded either on the character and state of the pleadings, or upon the state of the evidence and the admissions of counsel. ■
If viewed in the former light, it was clearly wrong.
The prisoner, it is true, was charged by the indictment with murder in the first degree, and the plea was not guilty. But the crime of murder in the first degree includes all the constituent elements of the lower grades of homicide; and there can be no question but that, in the state of the pleadings, the prisoner might, legally, have been found *638 guilty, either of murder in the second degree, or of manslaughter. But the general terms in which the instruction was given, were well calculated to mislead the jury, by inducing them to suppose that the form of the indictment was such as would authorize a conviction for murder in the first degree only.
But if we regard the charge as intended to be predicated on the state of the evidence, and the admissions of counsel, and to have been so understood by the jury, it was equally objectionable.
"Whether the homicidal act was committed purposely or otherwise, with or without malice, or with or without deliberation and premeditation, were questions of fact to which it was the exclusive right and province of the jury, upon consideration of the evidence, to respond. Whilst it was the right and duty of the court to pass upon the competency of the evidence offered, as well as to determine all other questions of law arising in the progress of the trial; yet of the credibility, weight and effect of the evidence, when offered, the jury were the sole judges.
It is accordingly provided, by express statute, “ that in all trials for murder, the jury before whom such trial is had, if they find the prisoner guilty thereof, shall ascertain by their verdict, whether it be murder in the first or second degree, or manslaughter; and if such person be convicted by confession, in open court, the court shall proceed, by examination of witnesses, in open court, to determine the degree of the crime, and shall pronounce sentence accordingly.” Swan’s Stat. 275, sec. 39. However clear and full the proof of guilt may be, the court cannot, under this statute, determine the degree of the crime, except upon conviction by confession, in open court, and then, only, as a question of fact, by the examination of witnesses. But where, as in this case, there is no confession of guilt, in open court, but all the allegations of the indictment are traversed by a plea of not guilty, the question of the prisoner’s guilt, and the degree of the crime, can, by no state *639 of the evidence, be withdrawn from the consideration of the jury, and transferred to the court for decision.
This same question was presented and decided by this court, at its last term, in the case of Robbins v. The State, in which the judgment of the court of common pleas was reversed, for the reason, among others, that a similar instruction had been given to the jury, by which they were required, if they found the prisoner guilty, to say by their verdict, that they found him guilty of murder in the first degree. The court unanimously held this to be a proper ground for reversal. But it is claimed that the present case stands on a different footing, because of the admission of counsel for the prisoner, in the argument of the case before the jury, that the defendant, if guilty at all, was guilty of murder in the first degree. But a majority of the court think that this circumstance does not affect the law of the case. The prisoner had pleaded not guilty to the indictment, and no argument or claim of his counsel could operate as a withdrawal of that plea, or as a confession of guilt, in open court. The premeditation and deliberation, the malice, the purpose to kill, and the homicidal act, charged in the indictment, were all denied by him. And whatever might be the effect of an admission of a material fact, made in open court, by his counsel, in the progress of the trial, with a view to obviate the necessity of proof on the part of the state, there was here no such admission. The evidence on both sides had been fully closed; and in the argument of the case to the jury, the prisoner’s counsel claimed, by way of argument, that the evidence which had been submitted to the jury, showed the case to be one of murder in the first degree, and that the defendant should, therefore, be found thus guilty, if at all. To this claim of counsel as to the effect of the evidence, the prosecuting attorney assented. There was here no admission of an independent fact, susceptible of direct proof, but a mere inference, claimed to be fairly deducible, as a conclusion, from the facts proved. By representing *640 the sole question as one of life or death, counsel, no doubt, hoped to induce hesitation on the part of the jury, and increase the probabilities of acquittal. It was but an argument, and could not, therefore, bind the prisoner, as an admission of an independent substantive fact; and the correctness of the reasoning, upon which it assumed to rest, should have been left to the jury to determine. This argument or claim of counsel, thus assented to, might very properly be considered by the jury; it might go far to relieve their minds of any doubt as to the grade of the crime; but still it could not operate to deprive them of the right, or discharge them from the obligation to inquire and determine for themselves, not only whether the evidence satisfied them of the prisoner’s guilt, but also as to the degree of crime which it established. It would have been competent for the jury, notwithstanding the argument of counsel, to have found the prisoner guilty of murder in the second degree, if in their judgment the evidence warranted such a verdict.
We think, therefore, that the court clearly erred in authoritatively directing the jury that they must either find the prisoner guilty of murder in the first degree, or find a general verdict of not guilty. And this error could only operate to the prisoner’s prejudice. Eor, though the court formally defined the crime of murder in the first degree, yet the jury were, in effect, instructed that the only issue upon which they were required to pass, was as to the prisoner’s connection with the homicide; and that if they found, from the evidence, that he committed the act by which the life of the deceased was taken, they would have to state in their verdict that they found him guilty of murder in the first degree. All inquiry into the grade of crime was thus cut off, and the character of the verdict was fully determined by finding the prisoner guilty of the homicide.
Eor these reasons, a majority of the court think the motion for a new trial should have been sustained. That *641 motion the prisoner might well make, if the jury was misdirected, to his prejudice, upon the trial of an issue involving his life, although no exception was taken by his counsel at the time the instructions were given. No consent of counsel could deprive him of the right to have such an issue, with all the questions of fact bearing upon it, tried and determined by a jury. The constitutional guaranties of this important right, and the statutory provisions intended to secure its integrity, would he unmeaning and valueless if a court may prescribe how the jurors shall answer the questions submitted to them.
It may be that in this case the verdict of the jury was fully warranted by the evidence. Be that as it may, the prisoner was still entitled to a trial by the tribunal, and in the mode prescribed by law. No presumption of guilt in this case can justify us in establishing a dangerous precedent, by denying him this right.

Judgment of the common pleas reversed, and cause remanded.

Brinkbrííobb, Sutlifb and Puck, JJ., concurred.